CENTRAL TRUST CO. OF NEW YORK v. NEW YORK & WESTCHESTER WATER CO. et al.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

WATER COMPANY—MORTGAGE BONDS—PRIORITY—WAIVER.

> Where the majority holder of first mortgage bonds and other securities of a water company entered into a compromise agreement, consenting to the issue of prior lien bonds by a consolidated company, on the express condition that she should have 51 per cent. of the new issue, and should be permitted to judge of the expediency of the issue of the balance, etc., and thereafter the so-called "prior lien bonds" were issued to bona fide holders by the original water company, secured only on its property, none of the issue being received by such majority holder, and the terms of the agreement being violated in several other respects, her priority under the original mortgage was not lost.

Appeal from special term, Kings county.

Action by the Central Trust Company of New York against the New York & Westchester Water Company, in which certain other parties intervened or were brought in as party defendants. Judgment for plaintiff, and certain defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

William L. Snyder, for appellant Mahlstedt Lumber & Coal Co.

Arthur J. Baldwin (Leonard D. Baldwin, on the brief), for appellant Corporation Trust Co. of New Jersey.

Henry A. Forster (Henry L. Rupert, on the brief), for appellant Joseph H. Bailey.

Arthur H. Van Brunt, for respondent.

WOODWARD, J. This action was brought to foreclose a mortgage made by the defendant the New York & Westchester Water Company to the plaintiff for an alleged default in the payment of interest. The action was originally brought against the New York & Westchester Water Company as sole defendant, and a receiver was duly appointed. Thereafter a supplemental summons was issued to all lien creditors of the defendant water company, and sub-

sequently the Bouker Contracting Company, claiming to be the holder of 20 of the bonds secured by the mortgage in suit, was permitted to intervene and serve an answer. Milton C. Gray, claiming to be the owner of 50 shares of the capital stock, and Joseph H. Bailey, claiming to be the owner of 20 shares of the capital stock of the defendant water company, were also permitted to intervene and serve answers. The Eleventh Ward Bank, holder of certain of the "prior lien bonds," hereinafter more fully considered, was also admitted as a party defendant, and was allowed to serve an answer. Finally, on motion of certain of the defendants, Maria H. Hotchkiss, the owner of 477 of the 500 bonds outstanding and secured by the mortgage involved in this controversy, was made a party defendant for the purpose of giving an opportunity to certain defendants to try out their claims to the effect that she was not an innocent holder for value, and that she had by agreement subordinated her holdings to bonds of a later issue.

The amended complaint sets forth the due issue of the 500 bonds outstanding; alleges the same are in the hands of bona fide holders for value; the execution of the mortgage to secure the same and its record; default in the payment of the interest due June 1, 1895, and of subsequent installments; due demand and refusal; declaration of the principal as due and payable under the terms of the mortgage, which was made a part of the complaint; the insolvency of the defendant water company; and that the other defendants have, or claim to have, some interest or lien upon the mortgaged premises, which is subsequent to the lien of the mortgage foreclosed; and prays judgment for foreclosure, etc.

It is necessary to an understanding of the issues presented by the several answers to review briefly the history of the affairs of the defendant water company, which was incorporated under the provisions of chapter 737 of the Laws of 1873, in November, 1890. On December 1, 1890, the mortgage here involved was made to the Central Trust Company, and by the provisions thereof the 500 bonds of the water company were issued and delivered prior to and on the 5th day of April, 1892. One Moses R. Crow, by an agreement dated November 24, 1890, undertook, in consideration of the issuing to him of $474,300 of the capital stock and $475,000 par value of the first mortgage bonds secured by said mortgage of December 1, 1890, to construct its works and furnish the water supply, and obtain hydrant contracts, so far as possible, from the New York Jockey Club, the Catholic Protectory, the County Club, South Mt. Vernon, and private consumers, and to deed the same, together with the control of the franchises and rights of the Southern Westchester Water Company, to the New York & Westchester Water Company. This contract was carried out by Crow, and his work was accepted by the water company, and the bonds were paid over to him. In addition to the $475,000 of bonds paid to Crow under the contract, the remaining $25,000 of bonds were paid to him in consideration of extra work performed in connection with the contract, so that he was originally the owner of the entire issue of bonds secured by the mortgage in suit. Prior to November 9, 1894,

Crow had disposed of 477 of these bonds to Maria H. Hotchkiss, who had been furnishing him financial support in his waterworks enterprises, dating back to about the beginning of the work, at which time she loaned him $25,000 on his own note, secured by $30,000 of the New York & Westchester bonds.  Following upon this transaction, there were numerous sales of the bonds of the New York & Westchester Water Company, as well as of several other companies simultaneously organized and constructed, and which constituted the general scheme which Crow says Mrs. Hotchkiss made a verbal agreement to finance for him, and the failure to perform which brought disaster to the New York & Westchester Company.  The relations between Crow and Mrs. Hotchkiss continued for several years, and the affairs of the water company appear to have grown steadily worse, resulting in several agreements for the extension of the time of her claims, which Mrs. Hotchkiss, it may be assumed, hoped would take the company out of its difficulties.  In the meantime Crow and the water company commenced an action against Mrs. Hotchkiss for a specific performance of the alleged parol contract to finance the waterworks schemes which Crow had undertaken, and the case was tried, but never determined; the parties, in the meantime pressed by creditors of the water company, having entered upon a new agreement, by which all prior agreements were rescinded.  At the time of making this new agreement, and on the 20th day of July, 1897, Mrs. Hotchkiss was the owner of $500,000, par value, of the second mortgage bonds of the New York & Westchester Water Company, and of $375,000, par value, of the mortgage bonds of the Upper New York City Waterworks Company, which she had received in payment of the indebtedness to her of Crow existing on the 27th day of July, 1895, and it appears to have been the purpose of the new agreement not only to cancel the agreement of July 27, 1895, in which Mrs. Hotchkiss had agreed to refrain from pressing her claims under the original mortgage for a period of seven years, but to make a provision for transforming Mrs. Hotchkiss' $875,000 worth of securities, a portion of which were second mortgage bonds, into $801,000 of prior lien securities upon the four water companies which it was proposed to consolidate and bring under one management, and to provide for the payment of outstanding indebtedness and the development of the properties, so that they should be put upon a paying basis.  To this end it was provided that:

"The said Maria H. Hotchkiss and the said Moses R. Crow agree that bonds for the aggregate amount of $1,600,000 may be made and issued forthwith and secured by a mortgage to be a first lien on all the properties of the four water companies, parties hereto, and that said bonds, if and when issued, shall be disposed of as follows: $801.000, par value, thereof shall be issued and delivered to the said Maria H. Hotchkiss as her absolute property, as one of the considerations passing to her hereunder; and the remainder of said bonds are to be issued, but only with the written consent of the said Maria H. Hotchkiss and of the said Moses R. Crow (unless the company issuing the same at the time of such issue is earning the necessary amount to pay the coupons thereon as they mature from time to time, in which event said consent of said Maria H. Hotchkiss and said Moses R. Crow shall not be necessary), for the purpose of providing the means for the

payment of the debts specified and scheduled in clause third thereof, and of acquiring the ownership of the Pocantico Waterworks Company bonds and stock now or lately held by the Waterbury estate, and now or lately held by the McNeil Pipe & Foundry Company and by J. Jennings McComb or J. M. Low, and of providing funds for the improvement or extension of the properties of the said water companies or some of them; but all of the parties hereto agree that none of the said prior lien bonds shall be sold for cash unless a sufficient amount of the cash proceeds of such sale shall be reserved by the company issuing such bonds to pay interest on the bonds so sold for cash for at least two years from the date of such sale," etc.

There was a further agreement that, if the bonds were issued in the payment of debts, there should be an effort to induce the creditors to agree that interest should be paid only out of the net income, etc., showing a disposition to bring matters to a firm business basis. It is thus evident that Mrs. Hotchkiss, in consenting to the issue of prior lien bonds, did so upon the express condition that she should have $801,000 of the new securities, leaving only about $74,000 of her holdings to be subordinate to the new bonds. That is, she was willing that there should be a new issue of first lien bonds upon all of the four water companies, that these bonds should be issued to pay the debts of the companies, and to improve the properties, provided that she was placed practically upon a par with the other holders of these new securities, and was permitted to judge of the expediency of the issue of these bonds for improvements, etc. The agreement above mentioned further provided that Crow should deliver certain other securities to Mrs. Hotchkiss, in trust for the purpose of carrying out the arrangements, Crow being the owner of substantially all of the securities of the four companies which it was proposed to bring together, with the exception of those owned by Mrs. Hotchkiss; but it does not appear to be necessary to deal with this phase of the case, except, perhaps, to throw light upon the principal transactions which are embraced in the controversy, and which are largely raised by those who were permitted to intervene. As one of the conditions of the agreement of July 20, 1897, Crow agreed to secure the resignations of "so many directors of each of the said four water companies as shall equal one more than one-half in number of the directors of each of said companies, which said resignations, however, shall not be used until the debts of each of said four water companies, as hereinbefore specified and scheduled in clause third, shall either have been paid or settled, or the prior lien bonds hereinafter provided for shall have been certified by the trustee of the mortgage securing the same, and delivered to the company making the same, under its agreement to apply so much thereof, or so much of the proceeds thereof, as may be necessary to the payment of said indebtedness." That is, the trust was not to become practically effective until the debts of the companies were provided for, so that Mrs. Hotchkiss, though owning in her own right nearly all of the bonds of the New York & Westchester Water Company, and holding a majority of the securities of the four companies in trust, was not to exercise the rights and duties of the trusteeship until the happening of certain events.

While matters were in this situation the defendant the New York & Westchester Water Company made and executed a mortgage to the defendant the Corporation Trust Company of New Jersey, to secure the issue of bonds provided for in the agreement of July 20, 1897, and 200 bonds of this issue, for $1,000 each, were delivered to the defendant the New York & Westchester Water Company, which corporation delivered certain of these bonds to the defendants the J. A. Mahlstedt Lumber & Coal Company, to one Thomas Daly, to one Henry Zick, and to one J. J. McComb. These bonds were designated as "prior lien bonds," and the several answers of the intervening defendants raise the issue that these bonds have priority over those of Mrs. Hotchkiss, who is primarily interested in the present action for foreclosure. Upon the trial the entire history of the various transactions was developed with great minuteness, and every point was contested with much of ability upon the part of counsel, and the learned court at special term has found in favor of the plaintiff, judgment being entered accordingly, from which an appeal is taken.

There is no suggestion in the evidence that any of these so-called "prior lien bonds" were issued to Mrs. Hotchkiss, who waived her rights under the original mortgage upon the express agreement that she should be given 51 per cent. of the new issue of bonds, which was to cover the property of the four water companies, instead of the two companies, the securities of which she already had. The so-called "prior lien bonds" are secured only by a mortgage upon the property of the defendant the New York & Westchester Water Company, and they fail in several other important respects to comply with the terms of the agreement of July 20, 1897. The situation, to the eye of equity, which looks back of the mere form to the substance, is that Crow was practically all there was of the four water companies whose securities he had given to Mrs. Hotchkiss for advances of money, and at the time of the issuing of the so-called "prior lien bonds" Crow was in control of the New York & Westchester Water Company, which corporation issued these bonds upon the pretended authority of the agreement of July 20, 1897, but without observing either the letter or the spirit of that contract, and, while the bona fide creditors have equities which it would be pleasing to adjust, their claims ought not to be satisfied at the expense of Mrs. Hotchkiss, unless it can be shown that she had consented to waive her rights. She had a prior lien upon the property, and there can be no presumptions against her right, acting through the trustees, to foreclose the original mortgage. The only limitation upon that right must result from her own consent, and she had a perfect right to fix the terms upon which she would relinquish her prior lien. This was done in a written contract, which declared that its purpose is "to finally adjust and settle all unsettled matters, whether in dispute or not, between the said Maria H. Hotchkiss and the said Moses R. Crow, and any or all of the other parties to this agreement"; and if the defendant the New York & Westchester Water Company, while its affairs were still under the control of Crow, took it upon itself to issue and dispose of $200,000

worth of bonds, which did not conform to the terms of the agreement, we are unable to discover any good reason why Mrs. Hotchkiss should be held to be bound by the terms or recitals of such bonds.

As all of the ingenious and subtle reasonings of counsel are based upon the theory that Mrs. Hotchkiss is bound by the terms and recitals of these bonds, it does not seem to be necessary to follow them through the elaborate briefs, and to point out the defects in each one of them. It is sufficient to say that a careful examination of all of the points suggested does not disclose error on the part of the learned court at special term. Until it can be shown that Mrs. Hotchkiss has consented to waive her rights under the original mortgage, and that all of the material conditions under which such consent was made have been complied with, it is no part of the duty of a court of equity to consider the relative rights of parties who claim under these so-called "prior lien bonds." The very nature of the bonds, and the fact that they purported to be prior lien bonds, was sufficient to call attention to the fact that they were incumbrances prior in point of time to the issue, and to impose upon purchasers, or those taking them for debts, the duty of inquiring whether the proper steps had been taken to make them in fact prior liens. Mrs. Hotchkiss, it is very certain, never intended to give the creditors of the New York & Westchester Water Company priority over her lien. The most that can be said is that she was willing, under certain conditions, to put them upon an equal footing with herself; that is, she was willing that they should, in common with herself, have prior lien bonds upon the consolidated properties of the four water companies, provided, however, that she should own a majority of such bonds, and should be permitted to have a voice in determining what portion of such minority bonds should be issued for the payment of debts and the betterment of the properties. Instead of carrying out this agreement, the New York & Westchester Water Company, while in the control of Crow, and before the trust agreement by its terms could come into force, issued a series of so-called "prior lien bonds," and this appeal seeks, practically in behalf of Crow, to overturn the judgment of the court at special term. The facts which may fairly be said to have been established by the evidence do not warrant this court in interfering with the judgment.

The judgment appealed from should be affirmed, with costs. All concur.